UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                          )
ANGEL TORO,               )
          Plaintiff,      )
                          )
          v.              )        CIVIL ACTION NO. 07-11721-PBS
                          )
STEPHEN MURPHY,           )
          Defendant.      )
                          )
```

### MEMORANDUM AND ORDER

December 17, 2009

Saris, U.S.D.J.

### I. INTRODUCTION

Plaintiff Angel Toro ("Toro") alleges that Defendant Stephen Murphy ("Murphy") withheld exculpatory evidence in violation of his civil rights, as defined by 42 U.S.C. § 1983. After hearing and review of the record, Defendant's motion for summary judgment [Docket No. 48] is **DENIED**.

### II. FACTUAL BACKGROUND

On April 19, 1981, Kathleen Downey was murdered during the robbery of a Howard Johnson hotel in Boston, Massachusetts, where she worked as a cashier. (Def.'s Mem. Supp. Mot. Summ. J., Ex. B.) On June 28, 1983, after one mistrial, Plaintiff Angel Toro was convicted of the murder and sentenced to life in prison. (Def.'s Ex. X.) Toro was initially implicated as a possible suspect by a tip from an unidentified police informant in 1981. (Def.'s SOF Supp. Mot. Summ. J. ("Def.'s SOF") ¶ 21.) At the

time of his initial trial, Toro's defense counsel questioned the accuracy of the eyewitness testimony implicating Toro. (Def.'s Ex. O at 6113-6146.)  One eyewitness to the murder, Jean Montgomery, initially told the police that she saw nothing, but later identified Toro from a photo array and from a lineup over two months after the murder. (Def.'s SOF ¶ 28.)  Another witness, Casper Diamond, identified Toro at trial as the man he saw standing and staring at the cashier area minutes before the shooting occurred. (Ex. O at 628-620.)  Diamond heard but did not see the shooting. (Id.)  Defendant Stephen Murphy was the investigating officer on the case. (Def.'s Exs. B, H.)

In August 2004, in response to Plaintiff's motion for a new trial, Boston Police Department ("BPD") Detective Wayne Rock was assigned by Assistant District Attorney Dennis Collins to review the contents of the police file on the Downey murder. (Def.'s Ex. W.)  Rock found a police report ("the report") written by Murphy and dated May 1, 1981, that referenced a robbery of an O'Neil's pharmacy in Malden, Massachusetts, on April 30, 1981. (Def.'s Ex. H)  One of the two robbers was killed at the scene and the other escaped. (Def.'s Ex. I.)

In the report, Murphy wrote that he had traveled to Malden on May 1, 1981, to speak with Malden detectives in connection with the robbery.  Murphy wrote that one of the Malden suspects "fit the general description of the suspect wanted in connection with the murder of Kathleen Downey on April the 19th, [1981]."

2

(Def.'s Exs. H, F.)  The report also stated that the weapon used in the Malden robbery had a sawed-off barrel, and that the BPD ballistics expert believed that the weapon in the Downey murder may also have been sawed off, although it was of a different caliber.  (Id.)

At the time Murphy traveled to Malden, the Malden police file on the robbery contained a sketch of the escaped suspect, that had been created by Malden officers.  (Def.'s Ex. I.) Although it was likely to have been in the Malden police file that Murphy reviewed, Murphy does not remember seeing the sketch of the escaped robbery suspect. (Def.'s Ex. C at 56:1.)  When shown the sketch at his deposition, Murphy stated that it resembled the description and sketch of the suspect in the Downey murder.  (Id. at 56:18.)  A comparison of the two drawings confirms the similarity.

Murphy claims that he has no memory of the report ever being in the Toro case file and no memory of ever turning the report over to John Kiernan ("Kiernan"), the assistant district attorney ("ADA") who originally prosecuted the Toro case.  (Id. at 57:18, 59:12.)  Murphy has stated that if the report was in the case file at the time of Toro's prosecution, it should have been given to the ADA, because it had "a potential for being exculpatory". (Id. at 57:18-19.)  Kiernan also stated that if he had the report, he "absolutely would have given it to [Toro's defense

counsel]."  (Pl.'s Ex. 3 at 89:3.)

Kiernan stated in his deposition that he had no memory of ever seeing the report on the Malden robbery.  (Def.'s Ex. D at 89:5.)  In addition, Toro's previous counsel, Patricia Garin, stated that Toro's previous defense attorneys had given her "everything they had" in their files, and that their files did not contain the report.  (Ex. Q at 10.)  Toro's counsel at trial, Frank Kelleher ("Kelleher") is deceased.  (<u>Id.</u>)

After Detective Rock notified ADA Collins of the existence of the report, Collins filed a motion to vacate Toro's conviction.  The motion was granted by Massachusetts Superior Court Judge Michelle Sikora on September 16, 2004.  (Def.'s SOF ¶¶ 154, 156.)  On October 4, 2004, the Suffolk County District Attorney's Office filed a <u>nolle prosequi</u> in the case against Toro for the Downey murder.  (<u>Id.</u> ¶ 157.)

## III. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Barbour v. Dynamics Research Corp.</u>, 63 F.3d 32, 36-37 (1st Cir. 1995) (citing Fed. R. Civ. P. 56(c)).  For a summary judgment motion to succeed, "the moving party must show that there is an absence of evidence to support the nonmoving party's position."

<u>Rogers v. Fair</u>, 902 F.2d 140, 143 (1st Cir. 1990).

The non-moving party "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." <u>Barbour</u>, 63 F.3d at 37 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)) (internal quotation marks omitted). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" <u>Rogers</u>, 902 F.2d at 143 (quoting <u>Anderson</u>, 477 U.S. at 249-50). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." <u>Barbour</u>, 63 F.3d at 36 (internal citations omitted).

In a motion for summary judgment on a Section 1983 claim, the moving party must show that non-moving party has not put forth sufficient evidence to create a genuine issue of material fact as to Defendant's liability under 42 U.S.C. § 1983. In the context of the instant case, to satisfy the requirements of the Section 1983 claim, Plaintiff must "show by a preponderance of the evidence that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." <u>Velez-Rivera v. Agosto-Alicea</u>, 437 F.3d 145, 151 (1st Cir. 2006) (citing <u>Johnson v. Mahoney</u>, 424

F.3d 83, 89 (1st Cir. 2005)) (internal quotation marks omitted).

**B. Withholding of Evidence.**

To succeed on a Section 1983 action for the withholding of exculpatory evidence, a plaintiff must prove: (1) that exculpatory evidence was withheld, see Brady v. Dill, 187 F.3d 104, 114 (1st Cir. 1999) ("[A] police officer sometimes may be liable if he fails to apprise the prosecutor or a judicial officer of known exculpatory information."); (2) that the withholding was intentional or reckless, see Burke v. Walpole, 405 F.3d 66, 81 (1st Cir. 2005) ("[T]he intentional or reckless omission of material exculpatory facts" can "amount to a Fourth Amendment violation."); and (3) that the evidence was material, see United States v. DeCologero, 530 F.3d 36, 64 (1st Cir. 2008) (stating that withholding evidence "violates due process where the evidence is material either to guilt or to punishment").

Defendant argues that there is an absence of evidence to support any of the three necessary elements of the claim, and that therefore summary judgment is proper.  In the alternative, he argues that the doctrine of qualified immunity absolves him from liability.

### 1. Withholding of Exculpatory Evidence

The first requisite element of a Section 1983 claim is that exculpatory evidence was withheld.  A withholding of evidence by a police officer can be shown by an absence of the evidence in

6

prosecution files.  See Reid v. Simmons, 163 F. Supp. 2d 81, 88
(D.N.H. 2001) (holding that a jury could infer that evidence was
withheld when prosecutors "testified that they never had [the
evidence] prior to Reid's criminal trial"); Reasonover v. St.
Louis County, 447 F.3d 569, 581 (8th Cir. 2006) ("[B]ecause there
is no specific evidence the officers affirmatively suppressed the
tape, we must decide whether these facts create a reasonable
inference they did so."). Murphy argues that evidence of the
absence of the report from the files of the prosecution and the
defense counsel is an insufficient basis to draw a reasonable
inference that the report was never turned over because it could
have been later misplaced.  However, neither the prosecuting ADA
nor any of Toro's living defense attorneys remember seeing the
report, and Murphy himself does not remember turning it over.
Based on this circumstantial evidence, a jury could reasonably
determine that it is more likely true than not true that Murphy
withheld the report.

### 2. Intent to Withhold

Plaintiff must also show that Murphy intentionally or
recklessly withheld exculpatory evidence.  The Supreme Court has
held that a police officer who withholds exculpatory evidence out
of mere negligence is not liable under 42 U.S.C. § 1983.  See
Daniels v. Williams, 474 U.S. 327, 330-31 (1986) ("[M]ere lack of
due care by a state official [does not] 'deprive' an individual

of life, liberty, or property under the Fourteenth Amendment.")
(internal citations omitted).  However, an officer is liable if
he withholds material exculpatory evidence intentionally or
recklessly.  See Burke v. Walpole, 405 F.3d 66, 70 (1st Cir.
2005) (denying summary judgment in a Section 1983 case "because
the record contains evidence, sufficient to create a jury
question, that [the officer] intentionally or recklessly withheld
exculpatory DNA evidence.") Intent or recklessness can be
inferred in lieu of direct evidence of either.  Educadores
Puertorriqueños en Acción v. Hernandez, 367 F.3d 61, 65 (1st Cir.
2004) (holding that a state official's improper motive could be
reasonably inferred from non-conclusory facts); see also
McMillian v. Johnson, 88 F.3d 1554, 1561 (11th Cir. 1996)
(holding that an officer's intent to withhold exculpatory
evidence can be "infer[red] from the circumstances").

In the present case, the Defendant authored the allegedly
exculpatory report, and in it states that he traveled to Malden
to follow up a lead on a possible suspect in the Downey murder.
(Def.'s Ex. H.)  Murphy's attention to the Malden robbery was
substantial enough that he drove several towns outside of his
jurisdiction to investigate the lead, and subsequently wrote the
report.

While there is no evidence that Murphy ever possessed the
sketch, an inference could reasonably be made that he saw the
sketch which was in the Malden police file at the time Detective

8

Murphy visited Malden to inquire about the robbery. (Def.'s Exs. H, I.)  The sketch bears a strong resemblance to the one created based on the memories of eyewitnesses to the Downey murder.

A jury could reasonably find that Murphy knew that the report and/or the sketch had some exculpatory value in the prosecution of Toro, as he admitted he would have turned them over.  A reasonable jury could infer from the circumstances that Murphy intentionally or recklessly withheld the report.

### 3. **Materiality of Withheld Evidence**

Finally, the Plaintiff must show that the withheld evidence was material to guilt or punishment.

Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985).  It is necessary that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." United States v. Avilés-Colón, 536 F.3d 1, 19 (1st Cir. 2008) (citing Strickler v. Greene, 527 U.S. 263, 290 (1999)) (internal quotation marks omitted).  "A showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." Kyles v. Whitley, 514 U.S. 419, 434 (1995).  Rather, the "touchstone of materiality is a 'reasonable

probability' of different result [at trial]."  <u>Id.</u> (quoting
<u>Bagley</u>, 473 U.S. at 678); <u>see also</u> <u>Ouber v. Guarino</u>, 293 F.3d 19,
26 (1st Cir. 2002) (holding in an ineffective assistance of
counsel context that a reasonable probability "may be less than
fifty percent").  Another circuit has held that a reasonable
probability exists when "the chances of acquittal are better than
negligible."  <u>United States ex rel. Hampton v. Leibach</u>, 347 F.3d
219, 246 (7th Cir. 2003).

In arguing that the report was material evidence, the
Plaintiff emphasizes the fact that both Kiernan and the Defendant
himself testified that the report should have been turned over.[1]
(Def.'s Ex. D at 89:6; Def.'s Ex. Q at 81:13; Def.'s Ex. C at
57:18.)  In addition, the report's materiality lies in the fact
that it points toward an alternative perpetrator in the Downey
murder.  The fact that the Malden suspect so closely resembled
the police sketch created by eyewitnesses in the Downey murder
could have provided the jury with an alternative theory of the
case.[2]  The allegedly withheld report identifies a suspect that
"fits the general description" of the Downey murderer.  (Def.'s

---

[1] In fact, Kiernan only said that <u>he</u>, as a prosecutor,
would have given the report to the defense — Kiernan did not
directly address Murphy's obligations.  (Def.'s Ex. D at 89:5-6.)
[2] There is some confusion in the record as to which
perpetrator of the Malden robbery-the deceased suspect or the
escaped suspect-closely resembled the perpetrator of the Downey
murder. It is stated differently in the report and in the sketch.
(Def.'s Exs. H, I.)  However, in either case the similarity could
support a reasonable finding of materiality based on the
existence of a possible alternative suspect.

Ex. H.)  Indeed, the sketch of the Malden suspect bears a very strong resemblance to the sketch created from the Downey eyewitness description.  (Def.'s Exs. H, I, F.)

Recent cases where "alternative perpetrator" evidence was at issue have required that there must be "some plausible nexus linking the other suspect to the crime" for alternative perpetrator evidence to be material.  See, e.g., Lopez v. Massachusetts, 349 F. Supp. 2d 109, 121 (D. Mass. 2004) (internal citations omitted) (holding that evidence that an alternative suspect was seen near the scene of the crime and was acquainted with several key parties was material); Kiley v. United States, 260 F. Supp. 2d 248, 273 (D. Mass. 2003) (holding that an anonymous tip from an informant that another man had talked about possibly committing the relevant robbery was not material).  In the present case, several facts add up to suggest a plausible nexus between the Malden suspect and the Downey perpetrator. Those facts include: (1) the very similar descriptions of the Downey suspect and the Malden suspect; (2) the fact that the Malden robbery was committed only eleven days after the Downey murder; and (3) the fact that the two crimes were committed with a sawed-off shotgun.  Although the issue is close, these facts create the "plausible nexus" required for evidence to be material.

Materiality must be determined by weighing the withheld evidence against the evidence presented at trial, and such an

11

analysis is appropriate here. <u>See</u> <u>Johnson v. Mahoney</u>, 424 F.3d 83, 91 (1st Cir. 2005) (determining materiality of a suppressed police report by comparing report to testimony presented at trial); <u>Strickler</u>, 527 U.S. at 289.  Two critical pieces of evidence in Toro's trial were the eyewitness identifications. One witness, Casper Diamond, did not witness the shooting but testified he saw Toro in the area directly before the murder.[3] The other eyewitness, Jean Montgomery, initially told investigators that she had seen nothing, though she later testified at trial that she had seen Toro robbing the cash register and stepping over Downey's body.  (Def.'s Ex. O at 694.) She first identified Toro from a photo array on May 3, 1981, and later in a lineup on July 7, 1981.  (<u>Id.</u>)  On balance, the corroborating testimony of these two eyewitnesses was strong, but it did not create a "slam dunk" case in light of the lack of forensic evidence and the vacillation of the key percipient witness.  Indeed, the first trial ended in a mistrial as a result of a hung jury.

Murphy argues that the report and sketch were similar to other pieces of "alternative perpetrator" evidence that Toro's lawyer had at his disposal yet chose not to present at trial. This evidence involved a folder compiled by the DA's office that

---

[3] Plaintiff's counsel appears to be incorrect in claiming that Diamond was initially unable to pick out Toro from a photo array. The record shows that Diamond did in fact identify Toro from the initial photo array.  (Def.'s Ex. O at 31-32.)

included police reports, photographs, and notes pertaining to four potential suspects in the Downey murder other than Angel Toro.  (Def.'s Ex. 5.)  The Defendant argues that, since Toro's trial attorney chose not to use evidence of other alternative suspects that the police investigated, the Malden report at issue in this case would not likely have been effectively used had it been disclosed.  (Def.'s Mem. at 13.)  However, a jury could reasonably find that the report and the sketch are compelling enough that Kelleher could reasonably have chosen to use them in 1981, despite his failure to use the other evidence he received from the prosecution.  Unlike the evidence Kelleher had at trial--which involved anonymous tips and possible suspects who had been convicted of crimes years before the Downey murder--the Malden lead concerned a very recent crime that bore similarities to the Downey murder and involved a suspect who resembled eyewitness descriptions in the Downey case.  (Def.'s Ex. 5.)  Therefore, a jury could reasonably find, had the withheld evidence been disclosed and subsequently presented at trial, that Toro's trial might have had a different result.

### C.    Qualified Immunity

Defendant argues that he is entitled to summary judgment on the grounds of qualified immunity because he could reasonably have believed his actions to be constitutional given the state of the law in April of 1981.

The "doctrine of qualified immunity protects public
officials from liability under § 1983 so long as 'their conduct
does not violate clearly established statutory or constitutional
rights of which a reasonable person would have known.'"  Burke v.
Town of Walpole, 405 F.3d 66, 76 (1st Cir. 2005) (quoting Harlow
v. Fitzgerald, 457 U.S. 800, 816, 818 (1982)).  The First Circuit
has held that a right is clearly established if the laws at the
time of the putative violation "defined the right in a quite
specific manner" and if the "announcement of the rule
establishing the right [was] unambiguous and widespread, such
that the unlawfulness of particular conduct will be apparent ex
ante to reasonable public officials."  Brady v. Dill, 187 F.3d
104, 116 (1st Cir. 1999).  Further, qualified immunity is
appropriate when the plaintiff has "not cited any cases of
controlling authority in [his] jurisdiction at the time in
question which clearly established the rule on which [he seeks]
to rely," or "identified a consensus of cases of persuasive
authority such that a reasonable officer could not have believed
that his actions were lawful."  Wilson v. Layne, 526 U.S. 603,
604 (1999).

The crucial question in this case is whether the
unlawfulness of Murphy's conduct would have been apparent to a
reasonable officer in the same position.  This demands an
analysis of the laws concerning materiality that existed at the
time of Murphy's alleged withholding.  At that time, evidence was

14

material if it "the omitted evidence create[d] a reasonable doubt that did not otherwise exist."  <u>United States v. Agurs</u>, 427 U.S. 97, 112-13 (1976).

> If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.  On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

<u>Id.</u>  At the time of the Plaintiff's criminal trial, the <u>Agurs</u> standard required timely disclosure of exculpatory evidence if, "on consideration of the entire record, the evidence is capable of creating a reasonable doubt that would not otherwise exist." <u>Commonwealth v. St. Germain</u>, 381 Mass. 256, 261 n.7, 408 N.E.2d 1358, 1363 n.7 (1980) (citing <u>Commonwealth v. Wilson</u>, 381 Mass. 90, 407 N.E.2d 1229 (1980)).  In addition, this duty was extended to the police officers who investigated the case.  <u>Commonwealth v. Redding</u>, 382 Mass. 154, 157, 414 N.E.2d 347, 348 (1980) ("The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of nondisclosure.") (internal citations omitted).

Under the <u>Agurs</u> standard, the difficult question is whether the report and the sketch, which suggest a possible alternative perpetrator of the Downey murder, rise to the level of evidence that "creates a reasonable doubt that did not otherwise exist." <u>Id.</u>  Given the fact that the eyewitness testimony in Toro's trial was attacked on several grounds (e.g., one eyewitness initially

claimed not to have seen anything, but later identified Toro as the assailant), a jury in a civil rights trial could find that the possibility of an alternative suspect, investigated by the police, who committed other violent crimes close in time and manner to the Downey murder, would have likely injected reasonable doubt into the mind of the trial jury in the criminal case.  The <u>Agurs</u> standard was sufficiently specific to "clearly establish" the right to exculpatory evidence regarding alternative suspects.

The big question is whether a reasonable officer in Murphy's position in 1981 would have believed that the evidence of an alternative suspect should have been turned over.  Murphy himself has admitted, through deposition testimony, that if he had the report, it should have been turned over as both exculpatory and material.

> Q.   Do you know what exculpatory evidence is?
> A.   Sure.
> Q.   Do you believe that this was the type of document
>      that should have been turned over to the defense
>      as exculpatory evidence? []
> A.   If it was in our case file, it should have been turned
>      over.

(Def.'s Ex. C at 58:11-19.)  In addition, the trial prosecutor, Kiernan, has stated that he "absolutely would have given it to [defense counsel]" if he had been aware of the report.  (Def.'s Ex. D at 89:5-6.)

In these circumstances, Murphy is not protected by qualified immunity.

## IV. ORDER

The Defendant's motion for summary judgment [Docket No. 48]

is **DENIED**.

/S/ Patti B. Saris

_____

PATTI B. SARIS
United States District Judge